# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| BENJAMIN R. HARDY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CV 211-063 |
| | * | |
| GHM ROCK AND SAND, INC., and | * | |
| GEORGE HERMAN MORRIS, | * | |
| | * | |
| Defendants. | * | |
| | * | |

### ORDER

Presently before the Court is a Motion for Summary Judgment filed by Defendants GHM Rock and Sand, Inc. ("GHM") and George Herman Morris ("Morris") (collectively "Defendants"). Dkt. No 23. Upon due consideration, the Defendants' Motion for Summary Judgment is **GRANTED in part and DENIED in part**. Defendants' motion is granted as to Plaintiff's Title VII claims asserted against Morris and Plaintiff's state law claims for intentional infliction of emotional distress asserted against both Defendants. Defendants' motion is denied as to Plaintiff's Title VII claims for retaliation and hostile work environment asserted against GHM, and as to Plaintiff's 42 U.S.C. § 1981

claims for retaliation and hostile work environment asserted against both Defendants.

## BACKGROUND

When considering a motion for summary judgment, the Court must consider the facts in a light most favorable to the non-movement. The following are the facts considered in the light most favorable to the Plaintiff, the nonmovant.

Plaintiff Benjamin R. Hardy ("Hardy" or "Plaintiff") began his employment with GHM on or about November 11, 2005. Hardy worked for GHM as a truck driver until he was terminated on April 17, 2008. Plaintiff alleges that he was continually subjected to racial harassment in the form of derogatory slurs and epithets while employed at GHM.[1] Plaintiff asserts that GHM's managers did nothing to prevent racial harassment by GHM employees and that the managers regularly participated in the harassment. Hardy complained to Floyd Lawhorne ("Lawhorne"), his supervisor, Jackie Owens ("Owens"), GHM's general manager, and George Herman Morris ("Morris"), GHM's owner, about the harassment, but nothing was done to remedy the situation. For example, on January 26, 2007, Hardy was physically attacked by a white coworker, Jeff Gilmore ("Gilmore"). Gilmore used the racial slur "n-----" during the attack. Hardy reported the

---

[1] The details of the harassment are set out more fully below.

2

attack and Gilmore's comments to GHM's general manager, but Gilmore was neither reprimanded nor terminated.

GHM typically allowed its truck drivers to select their preferred delivery routes on a first-come, first-served basis. On April 17, 2008, Hardy reported to the GHM offices in order to secure his second route of the day. Owens was in charge of assigning routes to drivers that day, and she told Hardy that the "East Port route" was available. The East Port route was preferable because it allowed drivers to secure the highest payment for the shortest turn around. Hardy asked Owens for the East Port route and she agreed. As Hardy was leaving the office, Owens said "you sure like that East Port route don't you." Hardy Dep. 67-68, Dkt. No. 27. Hardy responded, "yes, we all do, Ms. Jackie." Id. Owens then called Hardy lazy and said "wait a minute, bring your black ass back here." Id. Owens demanded that Hardy return the delivery ticket and told him that she was sending his "sorry black ass" on a less favorable route. Id. Hardy approached Owens's desk and asked to know why she would not let him take the East Port route. Owens opened the drawer of her desk so that Hardy could see a handgun she kept in the drawer. Hardy tried to discuss the route assignment with Owens, but she terminated his employment on the spot.

Hardy filed a charge with the EEOC on August 12, 2008, claiming racial discrimination and retaliation. The EEOC issued

3

a right to sue letter on January 24, 2011. Hardy filed this lawsuit approximately eighty days later, on April, 15, 2011. In his Complaint, Hardy asserts claims of a hostile work environment under both Title VII and § 1981, and claims for retaliation under Title VII and § 1981. Hardy also asserts a claim under state law for intentional infliction of emotional distress. Defendants seek summary judgment on all of Plaintiff's claims.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide that a party may move for summary judgment through identifying each claim or defense on which summary judgment is sought. Fed. R. Civ. P. 56(a). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Investor Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson

4

v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party discharges this burden, then the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

## DISCUSSION

### I. Title VII and § 1981 Claims

Plaintiff asserts hostile work environment and retaliation claims under Title VII and § 1981.[2] "Title VII and § 1981 'have the same requirements of proof and use the same analytical framework." Chapter 7 Trustee v. Gate Gourmet, Inc., 683 F.3d 1249, 1256-57 (11th Cir. 2012). Accordingly, the Court addresses Plaintiff's Title VII claims and § 1981 claims

---

[2] There was some ambiguity as to whether Plaintiff intended to assert discrimination claims based on Hardy's termination as a tangible employment action. See Reeves v. Robinson Worldwide, Inc., 594 F.3d 798, 808 (11th Cir. 2010) (describing the distinctions between disparate treatment claims based on tangible employment actions and those based on hostile work environments). Following the oral hearing on Defendants' summary judgment motion, Plaintiff clarified that he is only pursuing discrimination claims based the existence of a hostile work environment and retaliation, not based on a tangible employment action. See Pl.'s Notice, Dkt. No. 55.

simultaneously, with the understanding that the same analysis applies to both sets of claims.[3] See Blue v. Dunn Const., Co., Inc., 453 F. App'x 881, 883 (11th Cir. 2011) (addressing Title VII claims with the understanding that the same analysis applies to § 1981 claims).

**A. Hostile Work Environment**

Plaintiff alleges that he was subjected to a hostile work environment while employed at GHM. "A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (internal quotations omitted). To establish a hostile work environment claim, a plaintiff must show: "(1) he belongs to a protected group; (2) he has been subject to unwelcome harassment; (3) the harassment has been based on a protected characteristic, such as (in the

---

[3] Defendants contend that "[w]here the plaintiff has alleged violations of both Title VII and § 1981, the court will consider the claim under § 1981 only if violation of that statute can be made out on grounds different from those available under Title VII." Mot. Summ. J. 12-13 (citing Johnston v. Harris Cnty. Flood Control Dist., 869 F.2d 1565, 1575 (5th Cir. 1989) and Rivera v. City of Wichita Falls, 665 F.2d 531, 534 (5th Cir. 1982)). The cases Defendants rely on are not binding precedent in this Court. Moreover, the Eleventh Circuit recognizes that § 1981 and Title VII overlap one another, and are not mutually exclusive. Freeman v. Motor Convoy, Inc., 700 F.2d 1339 (11th Cir. 1983). No binding authority supports Defendants' position. A plaintiff need not assert separate factual grounds for § 1981 claim and a Title VII claim.

instant case) race; (4) the harassment is sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive work environment; and (5) the employer is responsible for such environment under a theory of vicarious liability or a theory of direct liability." Washington v. Kroger Co., 218 F. App'x 822, 824-25 (11th Cir. 2007). Defendants submit that they are entitled to summary judgment on Plaintiff's hostile work environment claim.

The requirement that the harassment be severe or pervasive contains an objective and subjective component. Washington, 218 F. App'x at 825. Therefore, to be actionable the "behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive." Miller, 277 F.3d at 1276. Notably, the "mere utterance of an . . . epithet which engenders offensive feelings in an employee . . . does not sufficiently affect the conditions of employment." Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993) (internal quotations and citations omitted).

For the subjective component, the employee must "subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment . . . ." Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999). There is no doubt that the Plaintiff subjectively

perceived the environment at GHM as hostile, and Defendants have made no argument to the contrary.

In making the objective determination, the Eleventh Circuit has found that the following factors should be considered: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Mendoza, 195 F.3d at 1246 (11th Cir. 1999).

The Court is satisfied that, based on the totality of the circumstances, the Plaintiff has produced sufficient evidence to create an issue of fact as to whether he was subjected to a racially hostile work environment. Allen v. Tyson Foods, Inc., 121 F.3d 642, 645 (11th Cir. 1997). The Plaintiff points to the following evidence of harassment in support of his hostile work environment claim:[4]

- GHM Employee Amanda Titchenell heard Morris and Owens refer to African-American employees, including Hardy, as "n-----." Titchnell Aff. ¶¶ 10-11, Dkt. No. 34.
- GHM Employee Daniel Mellerson stated that African-American employees at GHM were regularly referred to as "black bastards" or "black mother fuckers" in the

---

[4] Defendants assert that conduct that occurred more than 300 days prior to Hardy's filing of his EEOC charge cannot serve as evidence of a hostile work environment. Mot. Summ. J. 3. Defendants are incorrect. Allegations of a hostile work environment are viewed as "single unlawful unemployment practice," and "if the smallest portion of that 'practice' occurred within the limitations time period, then the court should consider it as a whole." Shield v. Fort James Corp., 305 F.3d 1280, 1282 (11th Cir. 2002).

presence of GHM supervisors. Mellerson Aff. ¶¶ 6-7, Dkt. No. 37.

- GHM Supervisor Floyd Lawhorne testified that Morris frequently used the word "n-----" at GHM. Lawhorne Dep. 12, 15, 34, Dkt. No. 32.

- Lawhorne further testified that Morris's computer password was "HNIC" which as an acronym for "head n----- in charge." Lawhorne Dep. 65.

- Lawhorne testified that Morris made comments like "I love beating a n----- out of a dollar." Lawhorne Dep. 36.

- Lawhorne testified that Owens used the word "n-----" on a daily basis. Lawhorne Dep. 15.

- Lawhorne testified that Owens would bring her pet dog to work and praise the animal when it attempted to bite GHM's African-American employees. Lawhorne Dep. 74, 145.

- GHM employee Sheldon Airall stated that Morris referred to African-Americans, including Airall, as "n-----s." Airall Aff. ¶ 7, Dkt. No. 35. Airall complained about Morris's comments to GHM Supervisor Floyd Lawhorne, and broke down in tears because of the severity of Morris's comments. Lawhorne Dep. 35.

- Airall stated that Morris told Airall that an island called "n----- island" existed in south Georgia, and that the African-American residents of that island were outsmarted by Caucasians. Airall Aff. ¶¶ 11-12.

- Hardy testified that he complained to Morris about the "n----- island" comment, to which Morris responded "as long as you got that GHM on your shirt, it's going to be the 50s, 40s, and 30s." Hardy Dep 94, Dkt. No. 27. When Hardy confronted Morris about the comment, Owens warned Hardy to "keep [his] mouth closed or [he would not] be employed here long." Id. at 97.

- Hardy testified that GHM employees referred to African-American employees as "n-----s" and "jungle bunnies" over the GHM CB radio system, that Hardy reported the incident to Owens, and that Owens did nothing to end the comments. Hardy Dep. 50-51, 121, Dkt. No. 27.

- Hardy testified that he complained to Owens about a racist comment, to which Owens replied that if Hardy did not like the work environment, he should resign. Hardy Dep. 80.

- Hardy testified that Morris told a racist joke about how he intended to take hunting hounds to Washington D.C. and "chase all them coons out." Hardy Dep. 103-104. Hardy complained to Owens and Owens took no corrective action. Id.

- Hardy testified that on January 26, 2007, Jeff Gilmore, a Caucasian GHM employee, physically attacked Hardy. Hardy Dep. 86. During the attack, Gilmore repeatedly screamed "I'm going to kill you, goddamn n-----. I'm going to fuck you up, you goddamn n-----." Id. at 86-92. GHM did not reprimand or terminate Gilmore.

- Hardy testified that on April 17, 2008, Owens arbitrarily denied Hardy the East Port route and called Hardy lazy. During the interchange, Owens made the following comments: "bring your sorry black ass back here" and that she was sending Hardy's "sorry black ass" on a less desirable route. Hardy Dep. 67-68. On that occasion, Owens opened her desk drawer and reached for a handgun. Id. Owens terminated Hardy immediately thereafter.

- Lawhorne testified that following Hardy's termination, Owens told Lawhorne "that n----- better be glad I didn't pull the damn trigger." Lawhorne Dep. 25.

First, there is sufficient evidence for a reasonable juror to conclude the harassment Plaintiff was subjected to was frequent. In analyzing the frequency of the conduct the Eleventh Circuit has held that there is "not simply some magic number of racial or ethnic insults" that preclude summary judgment. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002) (citation and quotation omitted). Instead, precedent requires a court to evaluate the evidence "in

10

context, [and] not as isolated acts, and . . . under the totality of the circumstances." Mendoza, 195 F.3d at 1246.

Plaintiff worked for GHM from November 11, 2005 to April 17, 2008, approximately two and a half years. During that period, Plaintiff was subjected to a litany of racial harassment. Plaintiff has presented evidence showing rampant and widespread use of racial slurs, derogatory insults, and racist jokes. Plaintiff relies not only on his own testimony, but the testimony of several other GHM employees, all attesting to the ever-present racial hostility that existed at GHM. The record reflects that the racially hostile remarks uttered at GHM, by its employees and managers, were so "commonplace, overt and denigrating that they created an atmosphere charged with racial hostility." E.E.O.C. v. Beverage Canners, Inc., 897 F.2d 1067, 1068 (11th Cir. 1990). The facts upon which Plaintiff relies clearly show that the harassment was frequent as that term is used in the context of the hostile work environment analysis. See, e.g., Shockley v. HealthSouth Cent. Ga. Rehab. Hosp., 293 F. App'x 742, 747 (11th Cir. 2008) (reversing a district court's grant of summary judgment, and finding a question of fact as to the severe and pervasiveness of harassment, in a hostile work environment claim where the employee alleged "frequent, severe, threatening, and humiliating verbal harassment by her supervisor" in the form of "several

11

racially charged comments" numerous "you people" comments, an allegation that her supervisor spoke to her in a threatening manner, and evidence that the employee requested transfer from her immediate boss's supervision).

Second, a reasonable jury could conclude that the conduct was severe. Conduct is severe when the work environment is "'permeated with discriminatory intimidation, ridicule and insult, not where there is the 'mere utterance of an . . . epithet.'" Miller, 277 F.3d at 1276-77. The Eleventh Circuit has instructed that courts should not consider the severity of each utterance, but the "severity of all the circumstances taken together." Reeves v. C.H. Robinson Worldwide, Inc., 525 F.3d 1139, 1146 (11th Cir. 2008). Here, as noted above, the African-American employees at GHM were subjected to frequent and vicious harassment in the form of racially offensive language. But in the case of Hardy, his harassment went further, including being the target of a violent physical assault where racial slurs were used. Indeed, this pattern of violence culminated when Owens brandished a firearm and terminated his employment. Taken together, a jury could find that the work environment at GHM was permeated with discriminatory intimidation, ridicule, and insult.

Finally, the Plaintiff has submitted sufficient, although disputed, facts that the work environment at GHM affected

Plaintiff's job performance. Hardy testified that he was forced to alter his work schedule and was in constant fear for his safety due to the violent, racist environment at GHM. Hardy Dep. 80-81. Plaintiff has shown that GHM's hostile work environment adversely affected his job performance.

In conclusion, the evidence presented creates a question of fact as to whether Plaintiff was subjected to severe or pervasive harassment. Accordingly, Defendants are not entitled to summary judgment on Plaintiff's hostile work environment claims.

### B. Retaliation

Plaintiff also asserts a claim of retaliation under § 1981 and Title VII. To establish a prima facie case of retaliation under Title VII, a plaintiff may show that (1) he engaged in statutorily protected activity, (2) he suffered a materially adverse action, and (3) there was a causal link between the two events.[5] Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1212-13 (11th Cir. 2008). An employee typically engages in statutorily protected conduct when he "communicates to [his] employer a belief that the employer has engaged in . . . a form of employment discrimination." Crawford v. Metro. Gov't of Nashville and Davidson Cnty., Tenn., 555 U.S. 271, 276 (2009).

---

[5] The elements of a retaliation claim are the same under § 1981 as they are under Title VII. Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1212-23 (11th Cir. 2008).

Plaintiff has presented copious evidence that he engaged in statutorily protected activity. Plaintiff testified that he complained on numerous occasions to Owens, Morris, and Lawhorne about racial discrimination at GHM. Hardy Dep. 51, 56, 79-81, 90-94, 96-97, 103-104, 106-108. Plaintiff further contends that he suffered a materially adverse employment action in the form of a reduction in "the number of routes [he] was allowed to drive and in the loss of [his] right to choose from the available routes." Compl. ¶ 56. Defendants do not dispute that either a reduction in routes or the loss of the right to choose among routes constitutes an adverse employment action. Rather, Defendants dispute whether Hardy has presented evidence that there was a causal link between his protected activity and the adverse action. Mot. Summ. J. 5. In support of their position, Defendants argue Hardy explicitly testified that the reduction in routes was not because of his protected activity, but "because of the poor economic conditions."[6] Id. (citing Hardy Dep. 121). However, a close reading of Hardy's deposition does not support Defendants' argument. Hardy merely stated that, at some point, the number of routes was reduced because of a downturn in the economy; Hardy does not state that the economic downturn was the only reason for the reduction, or that GHM did

---

[6] This is Defendants' only discernible argument in favor of summary judgment on Plaintiff's retaliation claims.

14

not reduce his routes in retaliation for his complaints about racial discrimination. Defendants' sole argument, based on a single statement in Hardy's deposition, does not demonstrate the absence of a causal connection between Hardy's complaints about racial discrimination and his reduction in routes.

Defendants have not identified grounds that the absence of a genuine issue of material fact, and therefore have not carried their burden in moving for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). As a result, Defendants are not entitled to summary judgment on Plaintiff's retaliation claims.

## II. Claims against Defendant Morris

Defendant Morris cannot be held liable in his individual capacity under Title VII.[7] See Dearth v. Collins, 441 F.3d 931, 933 (11th Cir. 2006) ("[W]e now expressly hold that relief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act, *regardless* of whether the employer is a public company or a private company."); Hinson v. Clinch Cnty. Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000) (stating that "[t]he relief under Title VII is against the employer, not [against] individual employees whose actions constitute a violation of the Act."); Williams v. Physician Grp., 2011 WL 1897188, at *1 (S.D.

---

[7] Plaintiff concedes this point. Pl.'s Resp. 22, Dkt. No. 43.

Ga. Apr. 20, 2011) (noting that "supervisory employees . . . cannot be held liable under Title VII in their individual capacities"). Consequently, Defendant Morris is entitled to summary judgment on Plaintiff's Title VII claims.[8]

### III. Intentional Infliction of Emotional Distress

Plaintiff's intentional infliction of emotional distress (IIED) claim is subject to a two-year statute of limitations. See O.C.G.A. § 9-3-33 ("Actions for injuries to the person shall be brought within two years after the right of action accrues . . ."); Risner v. R.L. Daniell & Assocs., P.C., 500 S.E.2d 634, 635 (Ga. Ct. App. 1998) (noting that there is a two-year statute of limitations for intentional infliction of emotional distress claims in Georgia). Plaintiff's employment with GHM ended on April 17, 2008. The present suit was filed on April 15, 2011, well after the two-year statute of limitations. Dkt. No. 1. Consequently, Plaintiff's IIED claim is untimely and the Defendants are entitled to summary judgment as to Plaintiff's IIED claim.[9]

---

[8] The 42 U.S.C. § 1981 claims against Defendant Morris in his individual capacity remain actionable. See Smith v. First Margie, Inc., 2011 WL 773432, at *1 (S.D. Ga. Feb. 28, 2011) ("Contrary to Title VII, individual employees can be held liable for discrimination under § 1981." (quoting Moss v. W & A Cleaners, 111 F. Supp. 2d 1181, 1187 (M.D. Ala. 2000))).

[9] Plaintiff concedes this point. Pl.'s Resp. 24.

16

## CONCLUSION

For the reasons stated above, the Defendants' Motion for Summary Judgment is **GRANTED in part and DENIED in part.** Defendants' motion is granted as to Plaintiff's Title VII claims asserted against Defendant George Herman Morris and Plaintiff's state law claim for intentional infliction of emotional distress asserted against both Defendants.  Defendants' motion is denied as to Plaintiff's Title VII claims for retaliation and hostile work environment asserted against Defendant GHM and as to Plaintiff's 42 U.S.C. § 1981 claims for retaliation and hostile work environment asserted against both Defendants.

**SO ORDERED**, this 29th day of August, 2012.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA